HERBERT RUBIN, trustee, *vs.* RUTH PRESCOTT
(and two companion cases[1]).

Middlesex. May 5, 1972. — June 29, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, & HENNESSEY, JJ.

*Landlord and Tenant*, Termination of tenancy, Tenancy at sufferance,
   State Sanitary Code, Recovery of possession. *Notice. Words,*
   "Proviso."

When a landlord purchased a building containing apartments occupied
   by three tenants who had been paying rent at monthly intervals to
   the seller as tenants at will, the tenants became tenants at suffer-
   ance, and letters sent by the landlord the day after purchase telling
   the tenants that they were to vacate the premises by the end of the
   following month unless they wished to remain at a specified rent
   satisfied G. L. c. 186, § 13, requiring timely written notice to the
   tenants that the preceding tenancy at will had terminated, so as to
   permit the landlord to bring an action to recover possession of the
   premises. [283–284].
Where tenants at will became tenants at sufferance by virtue of law
   when the building in which they were living was sold, they did not
   become tenants at will of the new landlord either as a result of
   a letter sent to them by the new landlord stating that they were
   to vacate the premises "now occupied by you as my tenant at
   will" and offering to create a new tenancy at will at a specified
   rent, to which the tenants did not agree, or as a result of the land-
   lord's acceptance of their next month's rent at the old rate, to
   which he was entitled by virtue of G. L. c. 186, §§ 3 and 13. [284–
   285]
A landlord was not barred by G. L. c. 239, § 8A, from recovering
   possession of premises rented for dwelling purposes which vio-
   lated the standards of fitness for human habitation established by
   the State Sanitary Code where the tenants did not establish that
   the landlord had received notice that the violations could en-
   danger or materially impair the health and safety of the occu-
   pants, that they had not themselves caused the violations, and that
   the violations could be remedied without the premises being vacated,
   all prerequisites for reliance on § 8A. [287–289]

SUMMARY PROCESS. Writs in the District Court of
Somerville dated October 9, 1970.

On appeal to the Superior Court the cases were heard
by *Connolly, J.*

---

[1] The plaintiff (landlord) in each case is Herbert Rubin, as trustee for
the Majestic Realty Trust of Medford, and the defendants (tenants)
are Ruth Prescott, Bernice Barry and "Mrs. Earl Pratt."

*John L. Mason, Jr.*, for the defendant Ruth Prescott.
*Robert G. McSweeney* for the plaintiff.

QUIRICO, J.   By each of three summary process writs
under G. L. c. 239, as amended, the plaintiff (landlord)
seeks to recover possession of a separate apartment al-
legedly occupied unlawfully by the defendant (tenant)
named therein.   The cases were originally entered and
tried in the District Court where the judge found for the
landlord against the three tenants.   The tenants appealed
to the Superior Court under G. L. c. 239, § 5, as amended
through St. 1969, c. 366, where the cases were retried,
again resulting in findings and rulings against the three
tenants.   The cases are now before us on the tenants' sub-
stitute bill of exceptions.[2]

The cases were tried in the Superior Court on the fol-
lowing stipulated isues: (1) Whether the notices to quit
given by the landlord to each of the tenants are valid; (2)
Whether the landlord's acceptance of the September,
1970, rent constituted waivers of the notices to quit; (3)
Whether at common law the landlord is barred from
bringing these actions because of violations of the State
Sanitary Code; and (4) Whether G. L. c. 239, § 8A, in-
serted by St. 1965, c. 888, and amended through St. 1969,
c. 355, bars the landlord from recovering despite the fact
that the tenants have not withheld rent.   The tenants sea-
sonably filed numerous requests for rulings.   After trial
the judge filed a written memorandum which was against
the tenants on the four stipulated issues, he denied sev-
eral of the requests for rulings, and he awarded posses-
sion to the landlord in each case.   The tenants excepted to
these decisions and rulings.   We shall consider the four
stipulated issues separately.[3]

---

[2] A judge of the Superior Court allowed a motion that the record on
appeal to this court be limited to the case of Rubin *vs.* Prescott, that
the other two cases be stayed, and that the rulings, orders, judgments
and decrees entered by this court in the case of Rubin *vs.* Prescott
shall govern the other two cases.

[3] The tenants have argued an exception on the issue whether the
landlord commenced these cases in reprisal for the acts of the tenants

A. *Sufficiency of Notice to Quit.* About August 20, 1970, the landlord purchased the building at 10–14 Laurel Street, Somerville, in which the three tenants were occupying apartments as tenants at will of the former owner and paying rent at monthly intervals. On August 21, 1970, the landlord, by his attorney, sent each tenant a written notice substantially as follows: "You are hereby notified to vacate, quit and deliver up the premises now occupied by you as my tenant at will . . . [describing the apartment occupied by the addressee]. This notice is effective commencing with the rental period beginning September 1, 1970, and terminating on the last day of September, 1970. In the event you desire to remain as my tenant after October 1, 1970, the rent will be $95.00 per month. . . . If I do not hear from you by September 15, 1970, I shall assume that you do not desire to renew your tenancy."

The tenants did not communicate with the landlord on this offer to them to become tenants, and on or about October 9, 1970, the landlord started the present proceedings against them to recover possesion. The tenants attack the sufficiency of the landlord's notices to them on several grounds.

1. It is undisputed that by virtue of the present landlord's purchase of the building in question the status of each of the tenants as a tenant at will of the former owner was terminated by operation of law, and that each became a tenant at sufferance. This change in status resulted from the conveyance of the property, and required no notice by the present or former owner to the tenants. *Stedfast* v. *Rebon Realty Co. Inc.* 333 Mass. 348, 350–

---

for reporting alleged violations of the State Sanitary Code to the housing authorities. G. L. c. 186, § 18, inserted by St. 1969, c. 701, § 1, and c. 239, § 2A, inserted by St. 1969, c. 701, § 2. This issue was not included in the four stipulated issues on which the case was tried, and is not properly before us. In any event, the exception is without merit because the judge expressly found that the landlord did not proceed against the tenants in retaliation for their reporting alleged violations to the municipal authorities. *Appelstein* v. *Quinn,* 361 Mass. 861.

351, and cases cited. *Marsh* v. *Goldstein,* 341 Mass. 83, 85. The tenants contend that the landlord was required to give them written notices of the termination of their tenancies at sufferance before starting the present proceedings against them. This contention is without merit.

At common law a tenant at sufferance is entitled to no notice of the termination of that status before the landlord moves against him to obtain possession. *Kinsley* v. *Ames,* 2 Met. 29, 31. See *Newman* v. *Sussman,* 239 Mass. 283, 285; *Souza* v. *Becker,* 302 Mass. 28, 30. Neither is he entitled by statute to any such notice of termination. However, under G. L. c. 186, § 13, if the tenancy at will of premises occupied for dwelling purposes is terminated by operation of law as it was in this case, the landlord may not dispossess the tenant or bring an action to recover possession of the premises "until after the expiration of a period, equal to the interval between the days on which the rent reserved is payable, from the time when the tenant receives notice in writing of such termination." This means notice of the termination of the preceding tenancy at will, and not of the existing tenancy at sufferance. The landlord's letters to the tenants on August 21, 1970, satisfied the requirements of this statute.

2. The tenants claim in the alternative that if the landlord's purchase of the property terminated their tenancies at will under the former owner, they became tenants at will of the landlord as a result of one or several subsequent occurrences. They argue that they again became tenants at will when the landlord sent them the notice of August 21, 1970, referring therein to "the premises now occupied by you as my tenant at will." Not even a most tortured reading of these words taken out of context can support the conclusion that they created a new tenancy at will. No unilateral notice by a landlord can accomplish such a result. A tenancy at will is a relationship based upon agreement. In the same notice on which the tenants rely the landlord offered to

create a tenancy at will at a specified rent if the tenants would agree, but the tenants never agreed.

B. *Landlord's Acceptance of Rent for September, 1970.* The tenants next contend that because they paid, and the landlord accepted, rent for the month of September, 1970, at the same rate they had been paying the former owner, they again became tenants at will. In accepting the payments the landlord expressly rejected the creation of any tenancy at will and instead reserved his rights to continue his efforts to obtain possession of the apartments. Furthermore, the tenants could not impose such a tenancy on the landlord in making this payment which they were obligated to make by statute. Under G. L. c. 186, § 3, "Tenants at sufferance in possession of land or tenements shall be liable to pay rent therefor for such time as they may occupy or detain the same." Further, under G. L. c. 186, § 13, a tenant at sufferance continuing in possession after notice that his tenancy at will has been terminated by operation of law is "liable to pay rent for such time during the said period as he occupies or detains the premises, at the same rate as theretofore payable by him while a tenant at will." The judge found that in accepting the rent payments the landlord did not waive his prior notice of August 21, 1970. The landlord was therefore entitled to continue with his efforts to obtain possession of the apartments. *Newman* v. *Sussman*, 239 Mass. 283, 284–285.

Since the tenants never became tenants at will of the landlord, it is unnecessary for us to consider their contention that the notices given them by the landlord were not sufficient to terminate such a tenancy. They were sufficient to meet the requirements of G. L. c. 186, § 13, and no more was required of them.

C. *Effect of State Sanitary Code on Landlord's Common Law Right to Recover Possession.* The third issue stipulated by the parties at the Superior Court trial is whether at common law the landlord is barred from bringing these actions because of violations of the State

Sanitary Code (Code). Since the Code is not a part of the common law, we construe this issue to be whether the landlord has lost his common law right to recover possesssion from the defendant tenants at sufferance because the premises do not physically comply with the minimum standards of the Code for dwelling purposes. The judge ruled that the violations of the Code do not bar the landlord's common law right of recovery of possession in this case. There was no error.

The tenants' argument on this point is based in part on their assumption that they are at least tenants at will. We have held above that they are not.[4] They rely specifically on the following provision of Reg. 1 of art. II of the Code:[5] "No person shall . . . let to another for occupancy any dwelling, dwelling unit, or rooming unit, for purpose of living, sleeping, cooking, or eating therein, which does not comply with the following requirements: [detailed requirements follow in Code]." They contend that the landlord illegally let to them premises which did not comply with the Code, and that the contract of letting being illegal, the landlord should be denied relief.

[4] If they were tenants at will, the landlord would be under no obligation to make any repairs or improvements to the apartments as a condition to recovering possession. At common law, tenants at will may not continue in occupation of premises in need of repairs which the landlord has not contracted to perform and then refuse to pay the agreed rent or resist the landlord's efforts to dispossess them. *Taylor* v. *Finnigan*, 189 Mass. 568, 572–573. See *Fiorntino* v. *Mason*, 233 Mass. 451, 452–453. We have held in a number of decisions that statutes prescribing in detail various structural and safety features which must be incorporated in certain types of buildings do not without more impose a contractual obligation on the landlord to his tenants to comply with the statutes. In *Palmigiani* v. *D'Argenio*, 234 Mass. 434, 436, we said: "The statute not having attempted to regulate or modify the contractual relations of the parties it should not be broadened, or a construction adopted by implication which would materially limit the rights of parties to enter into such lawful contracts as they please. It would be going far to say that the Legislature intended to do away with fundamental law." *Taylor* v. *Finnegan*, 189 Mass. 568, 572–573. *Vallen* v. *Cullen*, 238 Mass. 145, 147–148. *Borden* v. *Hirsh*, 249 Mass. 205, 210. *Garland* v. *Stetson*, 292 Mass. 95, 101.

[5] Article II of the State Sanitary Code was originally adopted by the Massachusetts Department of Public Health on September 13, 1960, in the exercise of authority granted by G. L. c. 111, § 5. By St. 1965, c. 898, §§ 1, 3, that authority was eliminated from § 5 and placed instead in a new § 127A, inserted in c. 111. Section 127A was further amended by St. 1971, c. 261. An amended copy of art. II of the Code was filed with the Secretary of State on August 1, 1969.

We need not consider the soundness of their conclusion because the entire argument is based on the erroneous assumption that the landlord "let" premises to them. He did not. They were and are his tenants at sufferance enjoying no contractual relation with him. His right to dispossess them is not founded on any contract, but upon his ownership of the property and their lack of any right to continue in possession.

D. *Does G. L. c. 239, § 8A, Bar Recovery?* General Laws c. 239, § 8A, inserted by St. 1965, c. 888, and amended through St. 1969, c. 355, provides that if premises rented for dwelling purposes are in violation of the standards of fitness for human habitation established by the State Sanitary Code, and the violation may endanger or materially impair the health or safety of persons occupying the premises, the landlord may not recover possession of the premises from a person whose tenancy has been terminated without his fault, provided several express conditions are met. The statutory conditions material to this case are: (1) that the tenant shall give notice to the landlord that (a) because of the violation he will withhold all rent thereafter until the violation is remedied, and (b) an inspection report has been issued by a person responsible for inspecting the premises for compliance with the Code, "which report states that such violation exists and that it may endanger or materially impair the health or safety of persons occupying said premises"; (2) that the violation was not caused by the person occupying the premises or any other person acting under his control; and (3) that the violation can be remedied without the premises being vacated.

Therefore, unless this case falls within all pertinent conditions of the statutory proviso,[6] the landlord may not

---

[6] We have previously said that a proviso "in common speech naturally expresses a qualification, a limitation, a condition, or an exception respecting the scope and operation of words previously used. Although a proviso in statutes, contracts or wills not infrequently introduces new or independent matter, its true office and its general purpose is to restrict the sense or make clear the meaning of that which has gone before." *Attorney Gen.* v. *Methuen,* 236 Mass. 564, 573. *Opinion of the Justices,* 254 Mass. 617, 620. *Spaulding* v. *McConnell,* 307 Mass. 144, 147.

be denied his common law right to recover possession of his premises from the defendant tenants at sufferance. We hold, as did the judge of the Superior Court, that the landlord is not barred by this statute. Our reasons follow.

1. One of the statutory prerequisites to denial of relief to the landlord is that the tenant give notice in writing to the landlord that a report of an inspection of the premises in question has been issued by the appropriate inspecting officer "which report states that such violation [of the Code] exists and that it may endanger or materially impair the health or safety of persons occupying said premises." G. L. c. 239, § 8A. The tenants gave no such notice to the landlord. They rely instead on the fact that the inspector sent the landlord a copy of his inspection report of the premises. Section 8A provides in part that "[w]ritten notification to the landlord of the existence of any violation which may endanger or materially impair the health or safety of persons occupying the premises issued by the . . . [inspecting officer] shall satisfy and be the equivalent of the notice" required to be given to the landlord.

This substitute procedure whereby notice may be issued directly to the landlord by the inspecting officer does not alter the requirement, set forth earlier in the statute, that such notice be of a report, "which report *states* that such violation [of the Code] exists and *that it may endanger or materially impair the health or safety of persons occupying said premises*" (emphasis supplied). The report sent to the landlord by the inspector did not satisfy this requirement of § 8A because it contained no statement that the violations listed therein "may endanger or materially impair the health or safety of persons occupying said premises." It said simply that "[a] recent inspection of your premises . . . has indicated the need for correction or elimination of the following items: Within thirty (30) days." There followed reference to several apartments, a list of items in each requiring "correction or elimination," and the inspector's signature.

The Legislature obviously anticipated that inspections for Code compliance would disclose violations affecting "the standards of fitness for human habitation" in varying degrees. The Legislature also obviously intended by the language which it used that a landlord otherwise entitled to recover possession of his premises should not be barred by the existence of minor violations, but that he should be barred only when the violations shown by the inspection report are so serious that they "may endanger or materially impair the health or safety of persons occupying said premises." The wisdom of requiring tenants to remain in occupation of premises which involve such risks to their persons in order to be entitled to the defence established by § 8A is not subject to judicial review. The judge properly ruled that the form of Code violation report in this case did not bar the landlord from recovering possession of his premises.

2. There are additional reasons why the tenants in this case cannot prevail in their reliance upon § 8A.

a. One of the conditions required in § 8A as a basis for denying recovery of possession by the landlord is that the violation of the Code "was not caused by the person occupying the premises or any other person acting under his control." The bill of exceptions makes no reference to any evidence on this issue, and the judge made no finding thereon.

b. Another statutory prerequisite to denial of relief to the landlord is "that the conditions constituting the violation can be remedied without the premises being vacated." The bill of exceptions states that an inspector testified that although it was preferable, it was not absolutely necessary that the defendants' apartments be vacated in order to repair the violations of the Code. The judge was not required to believe this evidence, and he made no express finding on this issue.

Thus, the record fails to establish the existence of the conditions discussed above which are prerequisites to the tenants' reliance upon § 8A as a defence.

What we have said above is dispositive of the case in

favor of the landlord. We therefore need not decide whether the tenants are also barred from using the Code violations as a defence because they did not give the landlord notice that they "would . . . withhold all rent thereafter becoming due until the conditions constituting such violations were remedied." G. L. c. 239, § 8A, as amended.

We have examined the tenants' requests for rulings and the judge's rulings thereon, and we find no error.

*Exceptions overruled.*