Bigelow, J.
This complaint is brought under Si. 1847, c. 267, §§ 1, 2, to recover possession of certain premises, occupied by the defendant, as tenant of the plaintiffs, under a written lease, on the ground that the lease has been determined by a notice to quit under § 1 of said act, for a failure te *284 pay rent according to the covenant in the lease. The premises were demised to the defendant for a term of two years, of which one year remained unexpired at the time of the commencement of this suit.
The tenant objects, in the first place, to the right of the plaintiffs to maintain their complaint, for the reason that they do not hold the demised premises in common, but are seized in severalty of separate and distinct parcels thereof, and cannot, therefore, jointly sue to recover the whole. Without stopping to inquire into the validity of this objection, as a defence to a process of this kind, in cases where the relation of landlord and tenant does not subsist between the parties, it is obvious that the defendant is estopped from taking any such ground. It would be a violation of the elementary principle, that a tenant cannot be permitted to deny or controvert his landlord’s title. The lease to which the defendant is a party is a conclusive admission by him, that the plaintiffs are so entitled to the premises demanded, as to enable them to sue jointly, for their recovery. 1 Greenl. Ev. § 24, 25; 2 Archb. N. P. 304, 400. Besides, the act under which the complaint is brought expressly authorizes the lessors to recover possession of demised premises by this process, when the lease has been determined in the manner prescribed in the statute. This exception, therefore, cannot be sustained.
The only other objection to the plaintiffs’ right to recover, upon which the defendant now insists, is founded on the alleged insufficiency of the notice to quit. This presents a question of great practical importance, and we have given to it a very careful consideration. The right to maintain a summary process, like that resorted to in the present case, for the recovery of lands and tenements held under a written lease, in case of non-payment of rent, is conferred by statute. It has no existence at common law. The party, who seeks to enforce the remedy thus given, must therefore comply with the statute, and all the proceedings in the case must be regulated and controlled by its provisions. 1 Chit. Pl. (6th Amer. ed.) 164; Fisher v. Shattuck, 17 Pick. 252.
By the first section of the act, the notice to quit, which the *285 landlord is required to give to the tenant, is made the basis upon which all the subsequent proceedings under the statute are founded. It is that which determines the lease, and gives to the lessor the right to this summary process against his delinquent tenant. If the notice to quit, therefore, has not been given in conformity with the requirements of the statute, the lessors cannot maintain their complaint to recover possession of the demised premises. The single inquiry then is, whether -the complainants in this case have substantially complied with the statute by giving to the defendant “ fourteen days’ notice to quit.” As the notice actually given was a notice to quit the premises “ forthwith,” it is clear that it did not in terms conform to the statute. The plaintiffs, however, seek to sustain its validity upon the ground, that, as the complaint was not commenced until after the expiration of fourteen days from the service of the notice, the tenant has in fact received the notice required by law. But there are several objections to this view of the case.
In the first place, it overlooks the real force and significance of the words of the statute. The expression, “ fourteen days’ notice to quit,” is equivalent to a notice to quit in fourteen days. Such is the ordinary and familiar use of these words as applied to cases of tenancy. For instance, a tenancy from year to year in England is said to be determined by six months’ notice to quit, by which is meant a notice to quit in six months, or at the expiration of six months. So, too, in case of a tenancy from quarter to quarter, or from month to month, a quarter’s or a month’s notice to quit is required, by which is always understood a notice to quit at the expiration of a quarter or a month. Such, in fact, is the mode in which notices to quit are almost uniformly designated in the elementary books, and in the reports of adjudged cases. Taylor, Land. & Ten. 49; 2 Archb. N. P. 394; Comyn, Land. & Ten. 268; Right v. Darby, 1 T. R. 159; Doe v. Spence, 6 East, 121; Huffell v. Armistead, 7 Car. & P. 56; Doe v. Green, 9 Ad. & El. 658.
But, in the next place, looking at the purposes of this provision of the statute, we think the notice to quit should be in *286 such form as to indicate to the tenant, that the lessor, in giving the notice, was acting under the statute, and with a view to the remedy provided by it, to recover possession of the demised premises. This is necessary, in order that the tenant may have the full time given him by law to quit the premises voluntarily, and avoid the cost' of a summary process for his eviction. The notice, therefore, should either state with accuracy the time at which by law he is required to leave the premises, or in some other way refer him to his legal rights under the statute. It may be that a notice in general terms to quit the premises, without specifying any time, if given fourteen days before the commencement of process, would be sufficient, because, as every one is presumed to know the law, the tenant, if in arrears of rent, would, by such notice, be referred to the statute. But certainly, if it contains any specification of the time when the tenant is required to quit the premises, it shduld specify it truly, otherwise it would serve to mislead him, and thus defeat the very purpose for which it was intended. To illustrate this, suppose that the plaintiffs in the present case had given notice to the tenant to quit the premises in twenty-four hours. Such a notice would have conveyed to the tenant no information by which he would have been referred to the statute, or could have ascertained the ultimate purpose of his landlord in giving him the notice. It would clearly have been a notice which the lessors had no right to give, and which the tenant was not bound to take.. And yet we cannot see why a notice to quit in twenty-four hours would not be quite as much in compliance with the statute as a notice to quit forthwith. Besides; if the notice in this case is held valid, it would be necessary to apply the same rule to cases arising under Bev. Sts. c. 60, § 26, by which it is provided, that in certain cases tenancies at will may be determined by three months’ notice in writing. If a notice to quit forthwith is valid, where fourteen days’ notice is required, it would be equally so where three months’ notice is requisite. The same reasoning which would support it in one case is equally applicable to sustain it in the other. But it would hardly be seriously contended, that a notice to quit forthwith *287 would be sufficient to terminate a tenancy at will, where three months’ notice is required.
It was suggested that the clause in the notice, stating that the tenant was “ in arrears of rent,” would sufficiently indicate to him, that it was intended as a notice under the statute. But it appears to us that this, so far from relieving the difficulty, rather serves to increase it; because, if the tenant had referred to the statute, he would have found that he was entitled to fourteen days’ notice to quit in case of a neglect to pay rent. Inasmuch, therefore, as in the present case, he was notified to quit forthwith for that cause, the more reasonable inference was, that it was not a notice given in pursuance of the statute.
A notice to quit, under this statute, is a distinct act upon which important rights and consequences are made to depend. It must, therefore, be sufficient and perfect of itself without reference to any subsequent proceedings. It is not made to depend upon them for its validity, but they upon it. The argument by which the plaintiffs seek to sustain the validity of the notice, in this case, would make the sufficiency of a notice to quit to depend not upon its own intrinsic validity, but upon the proceedings which are to" follow it. Such a construction would defeat the main object in requiring a notice to be given to the tenant, for he would then be left to wait for the commencement of the summary proceedings, in order to ascertain the object of his lessor in giving him the notice.
The term, “ notice to quit,” has a clear, well defined and settled meaning in the law. "When it is used in a statute, it is to be taken and understood in its legal and technical sense, with all the qualities and incidents which the law regards as essential to it, unless it is qualified by express enactment. Merchants Bank v. Cook, 4 Pick. 411; Rev. Sts. c. 2, § 6, cl. 1. Among the indispensable requisites at common law of a notice to quit, it is clearly established, that it must indicate to the tenant, with sufficient certainty, that he is to quit the premises at a certain fixed period, and if any mistake is made in designating the time at which he is required to leave, the *288 notice will be fatally defective. If the tenant is required to quit at too early a day, the notice will be unavailing. So, too, in cases where by stipulation between the parties to a lease a certain notice has been agreed on for the purpose of determining a lease, it is clearly settled that a mistake in naming the time when the tenant is required to quit, renders the notice ineffectual. 2 Archb. N. P. 397; Oakapple v. Copous, 4 T. R. 361; Doe v. Lea, 11 East, 312; Johnstone v. Hudlestone, 4 B. & C. 922; Doe v. Green, 9 Ad. & El. 658; Cadby v. Martinez, 11 Ad. & El. 720; Hanchet v. Whitney, 1 Verm. 311; Anderson v. Prindle, 23 Wend. 616; Baker v. Adams, 5 Cush. 99. We can see no difference in principle, by which we can distinguish these cases from those arising under our statutes, requiring notices to quit in order to terminate tenancies.
The case of Conant v. Hildreth, 10 Met. 298, was cited by the plaintiffs’ counsel as an authority to sustain the sufficiency of the notice to quit given in this case. But that decision did not turn upon the validity of the notice. The tenant in that case had become a tenant at sufferance by the alienation of the premises by the owner, and was not entitled to any notice to quit. The case did not involve the question at issue here.
In the case at bar, the notice given to the tenant was defective in stating the time, at which the tenant was required to quit the premises, incorrectly. It was a notice to quit the premises immediately, which the lessors could not legally give. The tenant, therefore, was not bound to regard it. He had a right to insist on the notice required by law, and to treat as a nullity the one given to him, because it was irregular, and not in conformity to the requirements of the statute. We are therefore of opinion, that the plaintiffs, having failed to give the tenant a legal notice to quit, cannot maintain their complaint Exceptions sustained.